**In re METEORA PROPERTIES, INC. formerly Embarcadero Properties, Inc., Debtor.**

**UNIONAMERICA, INC., a California corporation and Genstar Mortgage, formerly dba Western Mortgage Corporation, a California corporation, Plaintiffs,**

**v.**

**METEORA PROPERTIES, INC., formerly Embarcadero Properties, Inc., Defendant.**

**Bankruptcy No. 3–77–1476.**

**Adv. No. 1981–0039–JR.**

United States Bankruptcy Court, N. D. California.

May 5, 1982.

Howard D. Neal, Landels, Ripley & Diamond, San Francisco, Cal., for plaintiff, Genstar Mortg.

John J. Herigstad, Pleasant Hill, Cal., for defendant, Meteora Properties, Inc.

OPINION AND ORDER

JACK RAINVILLE, Bankruptcy Judge.

I.  This order to show cause for a preliminary injunction was heard on April 7, 1982. This case having been submitted on the oral arguments of counsel and written briefs filed, the court now makes its opinion and order as follows:

1.  On November 14, 1977, Meteora filed a case under Chapter XI of the Bankruptcy Act in the Bankruptcy Court for the Northern District of California entitled *In Re Meteora Properties, Inc.*, Chapter XI Case No. 3–77–1476.

2. A receiver was appointed January 17, 1978.

3. At the time of the filing, there were two lawsuits in progress involving Meteora in the San Francisco Superior Court against Genstar (then Western Mortgage).[1] The receiver entered into an agreement with Genstar to compromise the said lawsuits, the compromise providing for sharing some of the interpleaded money and for dismissals.

4. The receiver applied to the court for an order of approval of the compromise. The debtor, Meteora, opposed the compromise. Hearing was set for April 12, 1978, and was continued several times at Meteora's request to allow Meteora to obtain counsel. A hearing was finally held on July 28, 1978, resulting in an order of approval of the compromise, which order was made and entered on August 2, 1978.

5. Meteora appealed on the same date to the United States District Court which denied the appeal on January 19, 1979.

6. Meteora thereupon filed in the Bankruptcy Court a motion for reconsideration on January 31, 1979. This motion for reconsideration was denied on March 5, 1979. Meteora again appealed to the District Court on March 15, 1979, and upon the denial of that appeal by the District Court on September 20, 1979, filed on October 19, 1979, a notice of appeal to the United States Court of Appeals.

7. On or about August 2, 1980, without notice to Genstar, Meteora, which had previously filed a second amended plan of arrangement with the Bankruptcy Court, had it confirmed. The pertinent parts of the second amended plan of arrangement as it possibly affects the prior order for the approval of compromise reads as follows:

1. There was another party to the Superior Court action, but this opinion and order will deal only with Meteora and Genstar for convenience and brevity.

2. Adversary Action C, above referred to, was a suit by the receiver against Abbott in approximately half the amount of $19,600.

3. It is obvious that debtor's motion to dismiss on the grounds of mootness stemmed from its

Within 30 days of the entry of an order confirming this Second Amended Plan (or modified version thereof), Robert L. Abbott, the president of the debtor, shall deposit the sum of $19,600 with the disbursing agent. In exchange for said funds the Disbursing Agent shall deliver to RLA 1) a stipulation for dismissal with prejudice of Adversary Action "C" herein, duly executed by the receiver and his counsel, 2) a stipulation and order vacating the "Order Authorizing and Approving Agreement of Compromise Between Edward M. Walsh, Receiver, and Union-America, Inc. and Western Mortgage Corporation," duly executed by the receiver and his attorney and signed by the Bankruptcy Judge herein, ...[2]

*Compromise of Claim Against Western Mortgage Co.—$11,500.*

(The debtor has agreed as part of the proposed plan to "buy out" this compromise entered into by the receiver. In essence the debtor will pay to the receiver a sum equal to the compromise amount in exchange for all of the right, title and interest of the receiver in the compromise.)

8. After receiving approval of the above language, Meteora moved, on January 7, 1981, the United States Court of Appeals for an order dismissing its appeal on the grounds of mootness. The United States Court of Appeals granted the dismissal. On February 17, 1981, Genstar moved the United States Court of Appeals for reconsideration of its order of dismissal. The United States Court of Appeals denied the motion for reconsideration on June 15, 1981.[3]

9. Meteora, convinced that the dismissal of its appeal over the objection of Genstar and the denial of Genstar's motion to remand and reconsider had sunk Judge King's

conviction that the language in the second amended plan of arrangement had completely disposed of Judge King's prior order approving the compromise between the receiver and Genstar. It is equally obvious that the motion for reconsideration by Genstar in the United States Court of Appeals stemmed from its fear that such could be the case.

compromise approval order without a trace, made a motion in the San Francisco Superior Court in August of 1980, for summary judgment and other relief.

10. On September 8, 1981, plaintiff filed this adversary proceeding for injunctive and declaratory relief, and on that date Judge King issued an order to show cause and temporary restraining order restraining Meteora from any further activity in the Superior Court action.

11. Between the time of the issuance of the temporary restraining order by Judge King on September 8, 1981, and the hearing on the order to show cause before this court on April 7, 1982, Meteora made two more runs at the United States Court of Appeals.

    A. a petition for writ of mandamus denied by the appellate court on November 20, 1981, and

    B. a petition for writ of mandamus denied by the appellate court on December 30, 1981.

II. Plaintiff's order to show cause seeks: 1) a preliminary injunction enjoining Meteora from taking any action in the Superior Court of San Francisco except as directed by this court, and 2) an order that Meteora file a stipulation and joint application with Genstar to transfer the interpleaded funds in the San Francisco Superior Court's action to this court, within the 30 days following this court's issuance of a preliminary injunction.

Defendant resists this application on the following grounds:

1. That Judge King's compromise approval order required the compromise order to be executed by the debtor.

2. That the dismissal order of the United States Court of Appeals on February 17, 1981, and the denial by that court of Genstar's motion to remand and to reconsider the dismissal order on June 15, 1981, was *res judicata* as to Judge King's approval order, urging that by those orders the appellate court had determined Judge King's order approving the compromise to be vacated and void.

3. That the United States Court of Appeals expressly denied to Genstar the right to raise the matters now before this court and that Genstar, not being a creditor in the chapter case, has not the standing herein to sue nor any rights under the amended plan.

Dealing with these contentions this court finds:

1. Meteora's contention regarding the necessity of its signature ignores the fact that a receiver had been appointed in the case. It further ignores the fact that Judge King approved a settlement contract *already executed* between the receiver and Genstar, the efficacy of which was conditional only on the approval by the Bankruptcy Court. The language in Judge King's order with respect to the debtor's signature refers to the implementation of the *approved* compromise agreement. This contention has no merit.[4]

2. The answer to Meteora's second and third contentions dealing as they do with the proper meaning of the several orders issued by the United States Court of Appeals requires a review of those orders. They are in chronological sequence as follows:

A. The court's order of February 17, 1981, dismissing Meteora's appeal as moot on motion by Meteora.

B. That court's order of June 15, 1981, in response to a motion to remand or to reconsider the order of dismissal contains these words:

    Appellees' motion . . . is denied. The dismissal of the appeal does not preclude appellees from pursuing any available remedies deemed appropriate with respect to appellees' rights under the Second Amended Plan of Arrangement.

C. That court's order of November 20, 1981, in response to Meteora's petition for a writ of mandamus says as follows:

    The petition for writ of mandamus, filed November 9, 1981, is denied. This court's orders of February 17 and June 15, 1981,

---

4. Never in all of these proceedings and during all of these passes of the United States Court of Appeals did Meteora ever ask for or receive a stay of Judge King's judgment.

in appeal no. 79–4722, did not divest the bankruptcy court of jurisdiction to determine the effects of the Second Amended Plan of Arrangement on the rights of the parties, if any, with respect to the prior order approving the compromise of the claims at issue.

D. That court's order of December 30, 1981, in response to Meteora's petition for an emergency writ of mandamus reads as follows:

> The petition for writ of mandamus filed in this matter on December 7, 1981, is denied. Whether viewed as a petition for reconsideration of the court's November 20, 1981 order denying the petition in No. 81–7762 or as an independent petition for writ of mandamus, relief is not warranted at this time. Petitioner remains free to challenge on appeal any orders entered in the proceedings below and is faced with no injury incapable of correction on such an appeal.

3. Meteora, through its counsel, professes mystification over the meaning of the language of the Court of Appeals. It must be that the wish is the father to the thought; certainly this court does not share counsel's mystification. What the appellate court is saying in terms almost monosyllabic is that the entire question of whether the plan of arrangement in the chapter case vacates or affects Judge King's compromise approval order is still a decision for the Bankruptcy Court's resolution and that such resolution here can be the subject of another appeal. This court concludes, therefore, that the orders of the Court of Appeals are not *res judicata* of that issue and are *not* to be read as vacating or avoiding Judge King's order approving the compromise.[5]

4. Meteora's contention that the United States Court of Appeals expressly denied Genstar the right to raise these matters before this court is plainly erroneous in view of the appellate court's language in its order of November 20, 1981. It baffles this court that such a contention could be made by Meteora when the appellate court's order expressly stated that its previous orders *did not* divest the Bankruptcy Court of jurisdiction to determine the effect of the second amended plan of arrangement on the rights of the parties, if any, with respect to the prior order approving the compromise of the claims at issue.

5. The last contention of Meteora that Genstar, not being a creditor in the case, has no standing to prosecute this adversary proceeding or to contest the matters raised by the order of Judge King and the second amended plan of arrangement is simply meritless. All one has to do is state the matter in a different manner: a receiver entered into a compromise settlement with Genstar, which was approved by the bankruptcy court, but since Genstar was not a creditor in the chapter case and was not entitled to notice of hearing on the second amended plan of arrangement as a creditor, Meteora could then by the device of an amended plan unilaterally divest Genstar of the fruits of its bargain. This court would be amazed if there is any possible authority for *that* conclusion.

In any event, since the second amended plan of arrangement by its express terms merely provided that the receiver's position in the order approving compromise was being purchased or bought out by Meteora, Meteora has merely acquired the exact rights the receiver had, to wit, those specified in the compromise agreement. Meteora has the right to receive the proceeds of the compromise from the Superior Court interpleaded funds in the amount of 60 percent upon compliance with Judge King's order, and its receipt of said funds must be deposited in a separate account and not be disbursed except upon further order of the bankruptcy court.

For all the foregoing reasons, IT IS ORDERED that the preliminary injunction is granted, and Meteora is restrained during the pendency of this action, from proceeding in any manner in the San Francisco

---

**5.** Implicit in the appellate court's orders is its suggestion that Meteora stop dragging this matter piecemeal into the Appellate Court and wait until it has a decision that is properly appealable.

County Superior Court action entitled *Embarcadero Properties v. Lawyers Title Insurance Corporation*, Action No. 702693 except that Meteora is directed to file a stipulation in the San Francisco Superior Court action in a joint application with Genstar and transfer the interpleaded funds in the Superior Court action to this court within 30 days following this preliminary injunction order.